**STATE of Tennessee, Appellee,**

v.

**Stephen Allen ADAMS, Appellant.**

Supreme Court of Tennessee.

April 19, 1982.

Michael S. Long, Long, Umsted & Jones, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellee.

---

## OPINION

FONES, Justice.

Defendant appeals from convictions of murder in the first degree and sentence of death and using a firearm in the commission of a felony and sentence of five years.

The jury found defendant guilty of the only aggravating circumstance relied upon by the State—committing murder for remuneration. Our examination of the record discloses that the evidence fails to support that finding beyond a reasonable doubt. The only evidence offered by the State, direct or circumstantial, on that issue, was a statement given by defendant to police officers the day after his arrest, that he was paid three hundred dollars for his part in luring the victim out of his apartment so that Robert Pilgram could kill him. Defendant related a significantly different version of the killing at trial, that included a denial that he was paid any money to commit murder. There was no corroboration whatever of defendant's statement to the police officers that he was paid to kill the victim. In our opinion the proof was insufficient to establish beyond a reasonable doubt the aggravating circumstance of murder for remuneration and to justify imposition of the death penalty on that ground.

That action renders moot all issues raised on appeal except the admissibility of defendant's statement and the sufficiency of the evidence to support the conviction of murder in the first degree.

### I.

Defendant and Robert Pilgram were indicted for the murder of Demetrius Walker. Pilgram was granted a severance and was not called as a witness in this case.

Walker was found just after midnight on December 5, 1978, in a hallway near his apartment at 1430 Jefferson Avenue in Memphis, dead from a gunshot wound. The Deputy Shelby County Medical Examiner, a pathologist, performed an autopsy on Walker. He testified that Walker had sustained wounds from two bullets, one of which entered his back at the level of the tip of the scapula on the left side, fifty-four inches above the heal. That bullet passed through the chest, the left lung and the heart and was found in the anterior chest wall and turned over to the police. Parenthetically, the State's witnesses established that that bullet had been fired from a thirty-eight caliber Smith and Wesson six-shot revolver that was found in a search of a house at 1152 Coker Street, Memphis, and that the occupants of the house knew defendant. The medical examiner testified that another bullet entered the back of the right ankle six inches above the heel and left an exit hole on the front of the ankle five inches above the heel. The bullet that passed through the heart was the fatal bullet and the muzzle of the gun was twenty-four inches or less from the skin surface when fired.

Sheree Williams lived in an apartment next to Walker, heard the shots, looked out a window and saw a man running to a car parked down the street. She testified that the man got in the back seat of a four-door car that had a gray body and a maroon top; that another person was waiting in the driver's seat of the car and it was driven away rapidly after the man entered the back seat. She could not identify the fleeing man but said he had brown skin, medium height and was wearing light colored clothing. The gray/maroon car was a 1976 Ford Granada. Ms. Williams identified a picture of it at the trial as like the one she saw the fleeing man enter.

Christine Pilgram testified that she and defendant had been living together about a month prior to the date of the murder and that Robert Pilgram was her cousin; that she owned the 1976 Ford Granada shown in the picture that Sheree Williams had previously identified and that she frequently loaned it to defendant to vist his mother and for other purposes.

Janice Walker, widow of the victim, testified that her husband had been selling drugs from an apartment nearby that had bars around the door. She moved from the building about two weeks before her hus-

band was killed because she was afraid for the safety of her son and herself as well as her husband. She said she really did not know what was going on but identified a person named Cody and Robert Pilgram as having some connection with her husband's drug selling activities.

The remainder of the material evidence adduced at trial bearing upon the questions of who murdered Walker and why, came from the statement defendant gave Sergeant Holder at the Memphis Police Station and defendant's trial testimony.

Sergeant Holder testified that he and a Shelby County Deputy Sheriff went to Crown Point, Indiana where defendant was incarcerated for offenses committed in Indiana, and returned him to Memphis on January 12, 1979. The typed statement introduced into evidence recited that it was made at 2:25 P.M. on January 13, 1979, and that Sergeant Holder asked the questions.

Defendant objected to the admissibility of the statement and the basis for that objection was the following testimony of defendant: that defendant first gave a statement that he had shot Walker in self-defense but the police rejected that statement and told him that they had evidence that Cody and Pilgram were involved; that the police told defendant they wanted to pin the murder on Cody and Pilgram because of their drug dealings; that if defendant would give a statement involving Cody and Pilgram the police promised defendant he would get off with six months; that the officers would not let him make a phone call and threatened that they would "lose him" until he gave such a statement; that he was mad at Pilgram for leaving him in Indiana and not returning with money for bond and lawyers. For those reasons, defendant insisted that the statement was not freely and voluntarily given, and also that he had deliberately fabricated the involvement of others in the killing.

Sergeant Holder, another police officer who was present part of the time, and the typist testified that the *Miranda* rights were read to defendant, that he understood them and waived counsel and freely an-

swered all of the questions; that no self-defense statement was given and rejected, nor was any other version of what happened given at any time; that no promises were made and that in fact defendant was allowed to make a call prior to giving the statement. At the conclusion of the jury-out hearing; the trial judge overruled the motion to suppress the statement and that finding has the weight of a jury verdict in this Court and we must sustain it because there is material evidence to support it. *State v. Chandler*, 547 S.W.2d 918 (Tenn. 1977).

II.

Defendant's statement to the officers on January 13, 1979, related the following version of events, culminating in the murder of Walker: David Cody and Robert Pilgram were partners in the drug business and Walker was a pusher. Walker reported that he got "ripped off", Pilgram found out that was not true and the partners planned to dispose of Walker. Defendant was brought into the plan because Walker did not know him and suspecting that he was targeted, "checked everybody before he let them in" his apartment. Phillip Davis was apparently another pusher for the Cody-Pilgram partnership and lived or operated out of another apartment at 1430 Jefferson. The plan was that defendant would go to Walker's apartment, lure him to Davis' apartment, where Pilgram would be waiting. Then defendant, Walker and Pilgram would return to Walker's apartment, defendant would leave and Pilgram, "would take care of the rest." The plan was carried out, except that on the return from Davis' apartment to Walker's, Pilgram shot Walker in the back, in the walk-way before they reached Walker's apartment. Pilgram handed defendant the pistol and defendant left the area in Christine Pilgram's Ford Granada. Jerry Jackson had accompanied him to the Jefferson Apartments and waited for him in the car. They drove from the crime scene to 1152 Coker Street where

defendant "pawned" the murder weapon to Jackson.[1]

Defendant's trial testimony related a significantly different version of the murder. Defendant described himself as an independent operator in the drug business, selling preludes only, that, as a rule, he purchased in Chicago. He obtained Walker's name as a potential customer and went to Walker's apartment shortly before 10:30 A.M. on the day of the murder. Walker came to the door with a gun in his hand. Defendant told him he had 100 preludes for sale for six hundred dollars. Walker told him he only had three hundred dollars but to come back that night and he would have the remainder of the purchase price. That night defendant borrowed his girlfriend's Ford, went to Jerry Jackson's, smoked a little dope and left about 10:30 P.M. to close the sale to Walker. Defendant's knock was answered by Walker, again with pistol in hand, and he told defendant they would have to go around the corner to another apartment to get the other three hundred dollars. As they went around the corner at the base of the "L" shaped apartment building, Walker stopped, turned around, put the gun on defendant and told him to hand over the preludes. Defendant tried to talk him out of robbing him, "but then he swung with the pistol and I blocked it and he hit me a little bit, so I gave him the preludes." Defendant's description of the killing on direct examination was as follows:

"[a]s he started to walk away I sort of reached for him and said something and at that same time, I reached for my pistol and fired and I shot him."

Defendant said that he was very nervous and could not remember how many times he fired, probably three or four. Walker dropped the pills, defendant picked them up, ran to the Ford and drove back to Jerry Jackson's house where he "sold" Jerry the pistol.

The jury could have found defendant guilty of first degree murder beyond a reasonable doubt based upon defendant's statement to the officers or upon his trial testimony.

The elements of first degree murder were succinctly stated by Mr. Justice Cooper in *Sikes v. State*, 524 S.W.2d 483, 485 (Tenn. 1975), as follows:

"To convict a defendant of murder in the first degree, there must be an evidentiary basis for a conclusion by the jury that the killing was willful, deliberate, malicious and premeditated. [citations omitted] All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. And, if a weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, malice will be presumed from the use of the weapon. [citations omitted] Deliberation and premeditation involve a prior intention or design on the part of the defendant to kill, however short the interval between the plan and its execution. It is sufficient if only a moment of time elapses between the plan and its execution as long as the jury can conclude from the evidence that there was some appreciable interval, however small. And, whether premeditation is present in a given case is a question of fact to be determined by the jury from all circumstances of the case. [citations omitted]"

In the statement version defendant was present, aiding and abetting in the perpetration of a planned, cold blooded murder, whether or not any remuneration was involved.

If the jury accepted the trial version they could have found that defendant determined that it was necessary to kill Walker to recover his preludes and deliberately shot him in the back with one of the three or four shots he admitted firing, from a range of two feet or less.

The substantial evidence corroborating defendant's involvement in the murder, de-

---

1. Apparently two brothers, Anthony Hall and Eric Hall, rented the house at 1152 Coker. Jerry Jackson was their brother-in-law and it is not clear whether he lived there or was just a frequent visitor.

tailed herein, supports either of defendant's two versions of the killing. Beyond question the evidence of defendant's guilt of first degree murder meets the test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and T.R.A.P. 13(e).

The conviction of murder in the first degree is sustained. The sentence of death is set aside and this cause is remanded to the Criminal Court of Shelby County for the imposition of a sentence of life imprisonment in accord with T.C.A. § 39–2406(e).

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.