**STATE of Tennessee, Appellee,**

v.

**Lucy KILLEBREW, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 21, 1988.

Permission to Appeal Denied by Supreme Court Nov. 7, 1988.

Frank P. Miller, Bristol, Daniel P. Street, Kingsport, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Janice Bossing, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., R. Jerry Beck, H. Greely Wells, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

JONES, Judge.

The defendant, Lucy Killebrew, was convicted of murder first degree by a jury of her peers. When the jury could not agree on an appropriate punishment, the trial judge dismissed the jury and sentenced the defendant to life imprisonment in the Department of Correction. See T.C.A. § 39-2-203(h). The defendant appealed as of right to this Court following the denial of her motion for a new trial. Tenn.R.App. P. 3(b).

The defendant has presented eighteen issues for review. A reading of the defendant's brief reveals that the issues concerning the defendant's request for a change of venue,[1] the constitutionality of the Tennessee statutes proscribing murder,[2] the trial court's refusal to strike the premeditation instruction from the charge,[3] the failure of the trial court to order the State to provide the defendant with any agreements existing between the State and a State witness,[4] the refusal of the trial court to require a prosecution witness to undergo a mental evaluation,[5] the

---

1. While the defendant has elected not to address this issue, the record reflects the trial court did not abuse its discretion in denying the motion for a change of venue. Moreover, the defendant has failed to demonstrate to this Court that the jurors who actually sat in judgment of her guilt were biased and/or prejudicial. State v. Melson, 638 S.W.2d 342, 360 (Tenn.1982), cert. den. 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); Lackey v. State, 578 S.W.2d 101, 103 (Tenn.Crim.App.1978); State v. Stapleton, 638 S.W.2d 850, 856 (Tenn.Crim.App.1982); State v. Browning, 666 S.W.2d 80, 86 (Tenn.Crim.App. 1983). Defense counsel admitted at the hearing on the motion for a new trial that the defendant had at least eight (8) peremptory challenges available when the jury was sworn. He conceded that this issue was moot for all intents and purposes.

2. The Supreme Court of Tennessee has consistently ruled that the statutes proscribing the offense of murder are constitutional. See, for example, State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984); State v. Zagorski, 701 S.W.2d 808, 816 (Tenn.1985).

3. This instruction was taken from the Tennessee Pattern Jury Instructions; and the instruction, as given, reflects what has been the law in this jurisdiction for many years. See T.P.I.—Crim. § 20-01 (2nd ed. 1988).

4. The assistant district attorney general denied the existence of any agreement; and the defendant failed to establish that any agreement existed between the State and Alice Grose. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The record reflects that defense counsel did not question the witness concerning any agreement existing between the State of Tennessee and herself.

5. The appellate courts of this State have refused to extend the rule announced in Forbes v. State, 559 S.W.2d 318, 321 (Tenn.1977), to non-victim witnesses. State v. Garland, 617 S.W.2d 176,

discovery of the criminal and work record of the victim,[6] the testimony of an expert witness regarding the rope used to choke the victim,[7] the propriety of the trial court giving a limiting instruction following the testimony of a witness,[8] the admissibility of evidence regarding life insurance on the victim's life to insure the payment of a mortgage on the defendant's home,[9] the sufficiency of the evidence,[10] and the summation of the assistant district attorney general[11] have been waived. The defendant has failed to (a) make appropriate references to the record, *State v. Moore*, 713 S.W.2d 670, 675–676 (Tenn.Crim.App.1985); *Campbell County Bd. of Educ. v. Brownlee-Kesterson*, 677 S.W.2d 457, 464 (Tenn. App.1984); *Derryberry v. Martin*, 686 S.W.2d 94, 98 (Tenn.App.1984), (b) cite authority in support of the issues and argument advanced, *State v. McMiller*, 614 S.W.2d 398, 401 (Tenn.Crim.App.1981); *State v. Smith*, 735 S.W.2d 831, 836 (Tenn. Crim.App.1987), and (c) make an appropri-ate argument in some instances. In summary, the defendant has failed to properly brief these issues. See *State v. McKay*, 680 S.W.2d 447, 454 (Tenn.1984); *State v. Wallace*, 664 S.W.2d 301, 302 (Tenn.Crim. App.1983); *Nuclear Fuel Services v. Local No. 3-677*, 719 S.W.2d 550, 552 (Tenn.Crim. App.1986).

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument ... setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record ... relied on." Rule 10(b) of this Court provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct.Crim.App. 10(b). Consequently, this

185 (Tenn.Crim.App.1981). Moreover, the defendant failed to establish a compelling reason to warrant the entry of an order requiring the defendant's sister to submit to a mental competency examination. *State v. Garland*, supra.

6. The defendant was not entitled to discovery of this information. Rule 16, Tenn.R.Crim.P., does not provide for the discovery of this information. T.C.A. § 40–32–101(c)(3), which relates to the arrest history of a potential witness, does not create a pretrial remedy for the discovery of this information. *State v. Workman*, 667 S.W. 2d 44, 51 (Tenn.1984); *State v. Baker*, 623 S.W. 2d 132 (Tenn.Crim.App.1981).

7. In this jurisdiction the allowance of expert testimony, the qualifications of expert witnesses, and the relevancy and competency of expert testimony are matters which rest within the sound discretion of the trial court; and this Court will not interfere with the trial court's exercise of its discretion absent clear abuse. *Murray v. State*, 214 Tenn. 51, 55, 377 S.W.2d 918, 920 (1964). The trial court did not abuse its discretion in permitting the expert to testify regarding her findings concerning the charred rope found in the barrel at the defendant's home and the rope found around the victim's neck.

Moreover, this issue has been waived because the defendant did not object to the testimony of the expert on this ground or any other ground for that matter. Tenn.R.App.P. 36(a). *State v. Rhoden*, 739 S.W.2d 6, 12 (Tenn.Crim.App. 1987).

8. When evidence is introduced for a limited purpose, the trial court should give a limiting instruction to the jury which explains the limited use or purpose of the evidence. In *Martin v. State*, 584 S.W.2d 830, 833 (Tenn.Crim.App. 1979), this Court said that the better practice is to give the limiting instruction when the evidence is introduced. See *Price v. State*, 589 S.W.2d 929, 931 (Tenn.Crim.App.1979). Thus, the trial court did not commit error or abuse his discretion in giving a limiting instruction when the prior inconsistent statements were introduced.

9. This evidence was clearly admissible to establish the motive of the defendant for killing the victim.

10. There is sufficient direct and circumstantial evidence contained in the record from which a rational trier of fact could conclude that the defendant was guilty of murder first degree beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

11. This issue has been waived for yet another reason. Defense counsel conceded at the hearing on the motion for a new trial that he did not object to the argument of the assistant district attorney general, which he claims resulted in prejudice to his client. See Tenn.R.App.P. 36(a); *State v. Rhoden*, 739 S.W.2d 6, 11 (Tenn.Crim. App.1987); *State v. Wooden*, 658 S.W.2d 553, 559 (Tenn.Crim.App.1983).

Court will not consider the above enumerated issues.

## VENUE OF OFFENSE

■ The defendant contends that the State failed to prove the victim was murdered in Sullivan County beyond a reasonable doubt. We disagree.

The victim's body was found along the side of Interstate 81 near the Colonial Heights Interchange with a rope around his neck. The record reflects that the body was found in Sullivan County approximately sixteen (16) miles from the Virginia state line. There is no direct evidence in the record which establishes that the murder occurred at another location in this State or another state.

In *State v. Beall*, 729 S.W.2d 270 (Tenn. Crim.App.1986), this Court held that the question of whether a murder was committed in this State or another state is "a factual matter to be resolved by the jury after hearing all the testimony of the witnesses, weighing their credibility, and applying to the facts the law as given them by the trial judge." 729 S.W.2d at 271. See *Reynolds v. State*, 199 Tenn. 349, 287 S.W.2d 15 (1956). In the case *sub judice* the evidence is sufficient to support a finding by the jury that the victim was murdered in Sullivan County beyond a reasonable doubt. *State v. Beall*, supra.

This issue is without merit.

## MOTION TO SUPPRESS ROPE FRAGMENTS

On October 1, 1986, Robert Denney, a Tennessee Bureau of Investigation agent, and James Moffitt, a Kingsport police officer, traveled to Clarksville, Tennessee, to interview the defendant, the defendant's son, and the widow of the victim. The officers interviewed the widow on the morning of October 1, 1986. Later, the officers interviewed the defendant at her place of employment. The officers made arrangements with the defendant to interview her son when he returned home from school.

When the interview of the minor was completed, the officers asked the defendant if they could "look around the residence on the outside in the yard to see if there was any type of rope that might have been overlooked by previous officers that were at the scene." The defendant told the officers that "would be fine" and "she would help" the officers. The defendant's husband arrived home, and he had no objections to the officers searching the grounds surrounding the residence. The defendant accompanied the officers as they searched the area.

The officers were first taken to a small house behind the defendant's residence. Agent Denney and the defendant entered the house so that Denney could examine the victim's clothing and personal effects. It appears that the defendant and the victim's widow had placed the victim's personal effects in the house after their return to Clarksville. Denney noticed a piece of "baling twine" lying on the driveway while enroute to the small house. The defendant told Denney that the twine was the type of rope the victim had used to secure the luggage and personal effects to the top of the vehicle before commencing the trip to Clarksville.

Officer Moffitt removed the last cigarette from its package, crumpled the package with his hand, and walked to a garbage can, a fifty-five (55) gallon open drum, to place the package in the can. As he deposited the package, he immediately noticed what appeared to be the residue of burnt rope. He motioned for Agent Denney to join him. The defendant accompanied Agent Denney when he went to inspect the contents of the can. A photograph was taken of the inside of the can. Later, the officers removed the residue of the rope. Thereafter, they placed the remaining contents of the drum in a plastic bag. The defendant did not voice an objection to the officers' peering into the drum or their removal of the debris from the drum.

The defendant testified at the suppression hearing. She stated the only inquiry made by the officers was for permission to inspect the personal effects of the victim.

She accompanied Agent Denney to the small house behind her residence where the victim's effects had been stored. She denied giving the officers permission to search the grounds surrounding her residence; and she claimed the officers did not have permission to search the drum containing the charred rope. However, she related that Officer Moffitt, walking slowly behind them, was unwrapping either a cigarette pack or a chewing gum pack. She also admitted that Agent Denney did find pieces of rope along the driveway as they walked to the small house. In addition, she admitted she did not voice any objection when the officers looked inside the drum or removed the contents of the drum.

■ As can be seen, the question of whether the defendant consented to the search of the premises surrounding her home or limited her consent to the small house behind her residence hinged upon the credibility of the witnesses testifying at the suppression hearing. The trial judge found that the defendant consented to the search of the premises surrounding her home, including the garbage can.

The findings of a trial judge at the conclusion of a suppression hearing are afforded the weight of a jury verdict; and this Court will not set aside the judgment of the trial court unless the evidence contained in the record preponderates against his findings. *State v. O'Guinn,* 709 S.W.2d 561, 565–566 (Tenn.1986); *State v. Tate,* 615 S.W.2d 161, 162 (Tenn.Crim.App.1981). Where, as here, there is material evidence contained in the record to support the trial judge's finding of facts, this Court is required to affirm his judgment. *State v. Adams,* 631 S.W.2d 392 (Tenn.1982); *State v. O'Guinn,* supra.

This issue is without merit.

## DEFENDANT'S RIGHT TO PRETRIAL LINEUP

The defendant filed a motion prior to trial asking the trial court to enter an order requiring the State to conduct a lineup. The defendant's motion alleges:

Comes Lucy Killebrew and respectfully moves this Honorable Court to order a pretrial line up in front of witnesses expected to testify that they saw the defendant anywhere near Sullivan County on or about September 28, 1986. It is defendant's position that to ask for in court identification with the defendant sitting at defense counsel's table is highly suspect. A pretrial line up would surely cause no one any harm or unreasonable time and expense and would serve to guarantee the defendant's right to a fair trial.

The trial court denied the motion.

■ This issue has been waived by the defendant. The defendant has failed to make appropriate references to the record. See Tenn.R.App.P. 27(a)(7) and (g); Tenn. Ct.Crim.App. 10(b); *State v. Moore,* supra; *Campbell County Bd. of Educ. v. Brownlee–Kesterson,* supra; *Derryberry v. Martin,* supra.

It is not the responsibility of this Court to search the record for the purpose of locating pleadings, evidentiary hearings, and factual allegations which are not supported by citations to the record. *Schoen v. J.C. Bradford & Co.,* 642 S.W.2d 420, 427 (Tenn.App.1982). See *First American Bank of Nashville v. Woods,* 734 S.W.2d 622, 626 (Tenn.App.1987). In *Schoen v. J.C. Bradford & Co.,* supra, the Court of Appeals said: "This Court is not under a duty to minutely search a voluminous record to verify numerous unsupported allegations [of factual circumstances contained] in [a] brief." 642 S.W.2d at 427.

The purpose of Rule 27(g), Tenn.R. App.P., is to eliminate an appellate court's unnecessary review of the record. See *Austin v. City of Memphis,* 684 S.W.2d 624, 628 (Tenn.App.1984). This is especially true where, as here, the record is voluminous. *Austin v. City of Memphis,* supra. In the case *sub judice,* the record consists of 904 pages. Before this Court could address this issue on the merits, it was necessary to make a search of the technical record to find the motion filed by the defendant. Thereafter, it was necessary for the court to search the record to find the ruling of the trial court. The trial

court's ruling is contained in Volume 4 of the transcript.

Addressing this issue on the merits, the trial court did not commit error in refusing to grant the defendant's motion for a pretrial lineup.

In *Daugherty v. State,* 478 S.W.2d 921, 922 (Tenn.Crim.App.1972), this Court said:

> Error is assigned upon the denial of defendant's motion to have the Court, or the State, conduct a constitutionally proper pre-trial lineup and require the victim to view the defendant, his brother, and others therein. Defendant's counsel can cite no authority in support of this assignment, and we are aware of none.

Later, in the unreported case of *State v. Harold Lee Lawson,* Rutherford County No. 85–25–III, opinion filed at Nashville, May 23, 1986 [available on WESTLAW, 1986 WL 5881] this Court, relying upon *Daugherty v. State,* supra, and *United States v. Hurt,* 476 F.2d 1164 (D.C.Cir. 1973), held that a defendant does not have a right to a pretrial lineup. However, in *State v. Betty A. Bomar,* Henry County No. 3, June 1986 Session at Jackson, opinion filed September 17, 1986 [available on WESTLAW, 1986 WL 10088] this Court, holding that a defendant has no right to an in-court lineup, said:

> The appropriate procedure for the defendant to have taken was to request a traditional pretrial lineup procedure to assure that the identification witness would first view the suspect with others of similar description rather than in the courtroom sitting alone at the counsel table.... If the police officials had refused to arrange such lineup, then counsel could have resorted to the trial court for assistance. We note that in the case at bar, the trial judge was not informed that no pretrial lineup procedures have taken place.

A majority of courts have held that a defendant has no right to demand a lineup for the purpose of testing the ability of a witness or witnesses to identify the defendant. See, for example, *United States v. Zane,* 495 F.2d 683 (2d Cir.), cert. den. 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *United States v. McGhee,* 488 F.2d 781 (5th Cir.), cert. den. 417 U.S. 971, 94 S.Ct. 3176, 41 L.Ed.2d 1142 (1974); *United States v. White,* 482 F.2d 485 (4th Cir. 1973), cert. den. 415 U.S. 949, 94 S.Ct. 1471, 39 L.Ed.2d 564 (1974); *United States v. Furtney,* 454 F.2d 1 (3d Cir.1972). However, there is some authority which supports the right of an accused to a corporeal lineup. See *United States v. Caldwell,* 481 F.2d 487 (D.C.Cir.1973).

■ Our opinion in *State v. Bomar,* supra, does not mandate that a trial court must grant a defendant a pretrial lineup upon request. To the contrary, the question of whether the defendant should be provided with a lineup is a matter which addresses itself to the sound discretion of the trial court; and, absent clear abuse, this Court will not interfere with the exercise of this discretion.

■ In the case *sub judice* the defendant failed to establish any ground which would support the need for a pretrial lineup. Consequently, the trial court did not abuse its discretion in denying the motion.

This issue is without merit.

## ADMISSIBILITY OF LETTERS

Mickey Killebrew, the husband of the defendant, died on the 17th day of February, 1987, due to injuries sustained in a motor vehicle accident. A representative of the hospital gathered his personal effects, and gave them to Dickey Killebrew, the decedent's twin brother. After Mr. Killebrew returned home he examined his brother's effects. Among his effects was an envelope addressed to the decedent. This envelope contained a second envelope. The second envelope contained a letter from the defendant to her sister, the wife of the decedent. The second envelope contained the following message: "Mickey take this letter to Honey [the victim's widow]. Let her read it and get it back then tear it up." In the letter to her sister the defendant threatened to implicate her sister in the murder and the commission of other offenses if she did not conform her testimony to the statement the defendant

gave to the police. The defendant suggested that her sister could explain the variance between her prior statement and testimony at trial by stating the police scared her into making the statement.

The day following Mickey Killebrew's death Mary Killebrew, the decedent's sister-in-law, was asked to take the decedent's children from their home. While at the decedent's home, she asked the children where their father kept his bills and important papers. They directed her to a shelf, drawer and a briefcase in the den. She placed the papers, including a stack of letters, which were lying on the shelf and the contents of the drawer into the briefcase; and she placed the briefcase in the trunk of her car. She took the children to her home.

Shortly after the decedent's funeral Dickey Killebrew and Rex Killebrew, Mary's husband, found a letter the defendant had written to her son, Frankie Killebrew. This was one of the letters removed from the decedent's den. In the letter the defendant told her son "[i]f Honey [her sister] agrees to back down on her testimony I want you and her to get together and go over your stories and look at a map so your story will match." The defendant emphasized that it was important that their testimony correspond to the statement she gave to the police. She then outlined several facts which she wanted him to relate to the jury when he was called as a witness.

Rex Killebrew and Dickey Killebrew made the decision to reveal the contents of the two letters to the office of the District Attorney General in Montgomery County. Subsequently, the original copies of the letters were furnished to a Tennessee Bureau of Investigation Agent in Montgomery County. Later, the Sullivan County authorities obtained the original copies of the letters.

The defendant filed a pretrial motion to suppress the use of these two letters at the ensuing trial. The motion contended that Rex Killebrew had breached his fiduciary obligation by furnishing the two envelopes and letter, found on the body of his brother, Mickey Killebrew, and the letter addressed to Frankie Killebrew to law enforcement officers. As additional grounds, the defendant contended the correspondence found on the body of the decedent was protected by the marital privilege; and the letter addressed to her son was obtained from the home as a result of a warrantless search and seizure. The trial court denied the motion.

The defendant did not object when these letters were introduced into evidence.

In this Court the defendant contends that the trial court committed egregious error in denying her motion to suppress. The defendant further contends that the trial court committed error of prejudicial dimensions in permitting the letters to be introduced into evidence because the State failed to (a) call a handwriting expert to establish that the letters were written by the defendant, (b) establish a proper chain of custody, and (c) notify the defendant of the existence of the letters until shortly before trial, preventing the defendant from defending against the contents of the letter; and (d) the submission of the letters with portions excised was detrimental to the defendant.

Again, this issue has been waived for failure to make appropriate references to the record. Tenn.R.App.P. 27(a)(7); Tenn.Ct.Crim.App. 10(b); *State v. Moore,* supra; *Campbell County Bd. of Educ. v. Brownlee–Kesterson,* supra; *Derryberry v. Martin,* supra. In addition, the issues regarding the failure to establish that the defendant was the person who wrote the letters, the chain of custody of the letters, the short notice of the existence of the letters, and the submission of the letters to the jury with portions excised have been waived for yet another reason. The defendant failed to make a contemporaneous objection to the admission of the letters on these grounds, or any other grounds for that matter. Tenn.R.App.P. 36(a); *State v. Jenkins,* 733 S.W.2d 528, 532 (Tenn.Crim.App.1987); *State v. Rhoden,* 739 S.W.2d 6, 11, 12, 18 (Tenn.Crim. App.1987). Consequently, we will not address these particular issues.

■ The defendant's contention that the letters were obtained in violation of the Fourth Amendment to the United States Constitution and Art. I, § 7 of the Tennessee Constitution is without merit. These provisions of our Constitutions only apply to unreasonable searches and seizures made by government employees acting under color of a federal or state law. They do not protect a citizen against unreasonable searches and seizures conducted by a private citizen. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978); *State v. Zagorski*, 701 S.W.2d 808 (Tenn.1985). In the case *sub judice* the relatives of the decedent were not acting on behalf of or in conjunction with law enforcement officers when they came into possession of the letters shortly after the decedent's death. When the decedent's brothers revealed the contents of the letters to the office of the local district attorney general this was the first contact the relatives had had with a law enforcement official.

■ The marital privilege is not applicable to the letter found on Mickey Killebrew's person. See *Lee v. State*, 542 S.W. 2d 379, 381 (Tenn.Crim.App.1976); *State v. Lyon*, 648 S.W.2d 957, 960 (Tenn.Crim.App. 1982). While the exterior envelope was addressed to the defendant's husband, and instructions were written upon the enclosed envelope, the letter enclosed in the second envelope was addressed to the defendant's sister, not her husband. Thus, the defendant's reliance upon the marital privilege as a ground to exclude this letter is totally void of merit. *Lee v. State*, supra; *State v. Lyon*, supra.

This issue is without merit.

The judgment of the trial court is affirmed.

WADE, J., and RICHARD R. FORD, Special Judge, concur.