IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## STATE OF TENNESSEE v. RICKY ESTES

**Direct Appeal from the Criminal Court for Dekalb County**
**No. 03-053     Leon C. Burns, Jr., Judge**

------

**No. M2004-01911-CCA-R3-CD - Filed July 1, 2005**

------

The defendant, Ricky Estes, was convicted of burglary of an automobile, theft under $500.00, and possession of drug paraphernalia. The trial court sentenced the defendant as a multiple offender to four years, eleven months, and twenty-nine days. On appeal, the defendant raises the following issues: (1) whether the trial court erred in denying his pre-trial motion for a continuance; (2) whether the evidence is sufficient to support his convictions; and (3) whether the trial court erred in sentencing the defendant. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

John Preston Pryor, Smithville, Tennessee, for the appellant, Ricky Estes.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William Edward Gibson, District Attorney General; and William M. Locke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

The following proof was presented at trial. Sherry Serrano's testimony established that on December 28, 2002, around 11:00 a.m., she went to visit her father in the hospital. As she drove into the hospital parking lot, she noticed her sister's car and decided to park next to it. As she prepared to park, she observed the defendant and codefendant, Cindy Lemons,[1] leaning inside the passenger side of her sister's car. Ms. Serrano's mother, Minnie Mabe, also observed the defendant and Ms. Lemons inside the car.

------

[1] Cindy Lemons pled guilty to burglary of an automobile.

Ms. Serrano decided to park elsewhere in the parking lot and by the time she and her mother walked inside the hospital entrance, the defendant and Ms. Lemons were inside the hospital standing beside the hospital's handicapped-accessible bathroom. Once inside the hospital, Ms. Serrano told her sister, Tina Conley, about what she observed then both she and her sister went to the parking lot to check on the car. As they walked outside, the defendant and Ms. Lemons were again standing beside Ms. Conley's car. At this point, Ms. Conley demanded to know what the defendant and Ms. Lemons were doing inside her car. The defendant and Ms. Lemons denied the accusation.

The testimony of Ms. Conley established that prior to going to the hospital, she and her boyfriend, Alberto Gonzales, stopped by McDonald's Restaurant to eat. Mr. Gonzales paid for the meal and placed his wallet down between the front seats. Ms. Conley knew Mr. Gonzales had $150.00 in his wallet because he had just been paid. Upon parking at the hospital, Ms. Conley forgot to lock the doors of her car.

After her sister informed her that two strangers were in her car, Ms. Conley went outside and saw Ms. Lemons standing near her car and the defendant standing near the front doors of the hospital. Ms. Conley checked her car to see if anything was missing and saw her boyfriend's wallet lying on the passenger seat, empty. She confronted Ms. Lemons, who told her they were not going to give the money back. The police were called, and after searching the hospital, the police recovered a $100.00 bill. Mr. Gonzales corroborated Ms. Conley's testimony regarding the events of the morning and the amount of money in his wallet.

The defendant's aunt, Georgia Frazier, testified that on the day in question, she was at the hospital visiting her sick mother. She recalled the defendant coming into her mother's hospital room, going into the bathroom, and staying there for about five minutes. She recalled timing the defendant because she was impatient and was waiting for the defendant to take her place watching her mother, who was also his grandmother. After the defendant came out of the bathroom, the defendant came over to where his aunt was sitting and sat down. At this point, Ms. Lemons stepped into the room and tried several times to get the defendant to come out to the hallway to talk. After the defendant walked out to the hallway, Ms. Frazier heard Ms. Lemons whisper, "She'll tell." Ms. Frazier then heard the defendant whisper, "No she won't." Ms. Frazier then observed Ms. Lemons walk into the room and hide a small black case containing three syringes between the wall of the room and the leg of a hospital cot.

Upon inspecting the contents of the black case and hearing some commotion outside, Ms. Frazier asked the defendant what was happening. Ms. Frazier heard Ms. Lemons exclaim, "Oh, the law is going to get me. Will you get me out of jail." According to Ms. Frazier, the police came to her mother's hospital room, searched the bathroom, and found a one hundred bill. Ms. Frazier stated that she did not see the defendant with any money and thought it possible that the defendant was actually using the bathroom, not hiding money. Ms. Frazier also stated that it was possible that Ms. Lemons used the bathroom but did not know for certain because she did not observe Ms. Lemons going into the bathroom. Ms. Frazier further stated that Ms. Lemons came back to the hospital room later on in the evening and retrieved $50.00 from the leg of the hospital bed.

Police Officer, Steven Leffew, testified that he retrieved a sunglass carrying case containing three hypodermic needles and two cut straws. The case was wrapped in a leather belt. Officer Leffew indicated that the case was discovered under the hospital bed in Ms. Frazier's mother's room. Officer Leffew also discovered a one hundred bill folded on top of the light fixture in the bathroom. According to Officer Leffew, when first questioned, both the defendant and Ms. Lemons denied any wrongdoing, but Ms. Lemons eventually stated that she would take the officers to the money if they would not prosecute. Officer Leffew also indicated that Ms. Lemons told him that the syringes were hers. Officer Leffew further indicated that the defendant and Ms. Lemons were together as boyfriend and girlfriend.

D.Y. Young, a bonding company agent, testified that, after providing bond for Ms. Lemons, she instructed him to take her to the hospital. She went inside and came back with $50.00 to pay him.

The jury found the defendant guilty of burglary of an automobile, a Class E felony; theft under $500.00, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. The trial court sentenced the defendant as a multiple offender to four years for his burglary conviction and eleven months and twenty-nine days each for his theft and possession convictions. The trial court ordered the defendant's misdemeanor convictions to run concurrently but ordered the theft misdemeanor conviction to run consecutive to his burglary conviction for a total effective sentence of four years, eleven months, and twenty-nine days.

## II. Analysis

### A. Denial of Continuance

On appeal, the defendant first argues that the trial court erred in denying his pre-trial motion for a continuance made on the day of trial. Although the defendant concedes that he was at fault for not meeting with his attorney, the defendant argues that the trial court was aware of problems he had meeting with his attorney and that to deny his first request for a continuance seems unjust.

The trial court's denial of a continuance will be reversed on appeal only if it appears that the trial court abused its discretion to the prejudice of the defendant. State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004). An abuse of discretion is demonstrated by showing that the failure to grant the continuance denied the defendant a fair trial or there would have been a different result had the continuance been granted. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995). In order to establish an abuse of discretion, the defendant must make a clear showing of prejudice as a result of the continuance being denied. State v. Robinson, 146 S.W.3d 469, 517 (Tenn. 2004).

In the present case, the defense counsel moved for a continuance immediately prior to trial. The defense counsel requested the continuance due to his inability to meet with the defendant and discuss the case. The defense counsel informed the court that the defendant had been unable to make several previous appointments, and that he was not able to get in touch with the defendant because

he was given an incorrect phone number. The trial court denied the motion. The trial court noted that the defendant had an extensive criminal history and thus was no stranger to the criminal justice system. The trial court stated that the defendant chose not to stay in touch with his attorney, and it was the defendant's own fault if his attorney had not collaborated with him in preparation for trial. Our review of this record discloses no abuse of discretion in the present case, nor has the defendant established that he was prejudiced by denial of the motion. This issue is without merit.

## B. Sufficiency of Evidence

The defendant next argues that the evidence was insufficient to sustain his convictions. Specifically, the defendant argues that while there was proof that his codefendant, Ms. Lemons, was guilty of the burglary, theft, and possession offenses, there was no proof beyond a reasonable doubt that he committed these offenses. The defendant alleges that the jury "assumed" him into the penitentiary based upon the actions of his codefendant.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. Carruthers, 35 S.W.3d at 558; Tuggle, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002); Bland, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. See State v. Elkins, 102 S.W.3d 581, 582 (Tenn. 2003); Reid, 91 S.W.3d at 277.

To obtain a conviction for burglary of an automobile, the State must essentially prove that a person, without consent of the automobile's owner, entered the automobile with the intent to commit a theft. See Tenn. Code Ann. § 39-14-402(a)(4). To prove a theft offense, the State must show that a person, with intent to deprive the owner of property, knowingly obtained or exercised control over the property without the effective consent of the owner. Id. § 39-14-103.

In the present case, the proof showed that both the defendant and Ms. Lemons entered Ms. Conley's car without Ms.Conley's permission and that $150.00 was taken from a wallet lying inside

the car. The defendant then went into a private hospital room occupied by his aunt and grandmother and went into the bathroom for a period of time. Later, the police discovered a one hundred dollar bill hidden inside the same bathroom. Ms. Lemons retrieved $50.00 inside the leg of a hospital bed, which was inside the same private hospital room. Viewing the evidence in the light most favorable to the State, we conclude that the jury could reasonably find from the circumstantial evidence that the defendant intended to enter Ms. Conley's car in order to steal $150.00 and intended to keep the money as illustrated by his attempt to hide the $100.00 bill.

In order to convict the defendant of possession of drug paraphernalia, the State must prove that he used or possessed with the intent to use drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]" Tenn. Code Ann. § 39-17-425(a)(1). Possession of drugs or drug paraphernalia may be actual or constructive and may be proven by circumstantial evidence. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Constructive possession requires proof that a person had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 444 (Tenn. Crim. App. 1997)). In other words, "constructive possession is the ability to reduce an object to actual possession." State v. Ross, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted). Possession may also occur either alone or jointly with others. See State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984).

In the present case, the proof established that the defendant and Ms. Lemons had a conversation where Ms. Lemons said, "She'll tell," followed by the defendant's assurance, "No she won't." Immediately thereafter, Ms. Lemons came into the private hospital room, which the defendant was associated with, and hid the drug paraphernalia. The defendant's aunt testified that the defendant was to take over watching and sitting with his grandmother while she went home. Clearly, the jury could infer from this proof that the defendant directed Ms. Lemons into the hospital room to hide the drug paraphernalia and anticipated being left alone with the drug paraphernalia. Moreover, the jury was given instructions on criminal responsibility. "A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). Therefore, we conclude that the circumstantial evidence was sufficient for a rational trier of fact to infer the defendant's constructive, joint possession of the drug paraphernalia found in the defendant's grandmother's hospital room. This issue is without merit.

### C. Sentencing

The defendant next argues that the trial court improperly enhanced his sentence in violation of Blakely v. Washington, 542 U.S. ----, 124 S. Ct. 2531 (2004), and failed to properly weigh the mitigating evidence present in his case. Specifically, the defendant argues that the trial court's reliance on hearsay evidence of prior convictions violated Blakely in that his sentence was based

upon past criminal behavior and not reliable evidence of criminal convictions. The defendant also argues that the trial court's failure to give weight to the mitigating evidence constitutes error.

The record reflects that Byron Houston, an employee with the Board of Probation and Parole, testified at the sentencing hearing that he prepared the presentence report. According to Mr. Houston, his search of the defendant's criminal history uncovered ten prior felony convictions and numerous misdemeanor convictions in several counties. Mr. Houston produced certified copies of judgments for some of the prior felony convictions which were placed in the record. The defendant did not contest the accuracy of the information regarding the listed convictions. The trial court carefully considered the convictions contained in the presentence report and the certified copies when sentencing the defendant. The trial court found mitigating evidence, that the defendant's conduct neither caused nor threatened serious bodily injury, but assigned it little weight. The trial court assigned great weight to the defendant's extensive criminal record and sentenced the defendant to the maximum of four years for the felony conviction, and eleven months, twenty-nine days for the misdemeanor convictions. The trial court essentially ran the misdemeanor convictions concurrently to each other but consecutively to the felony conviction.

Before a trial court sentences a convicted defendant, it must consider (1) the evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any mitigating or enhancement factors; (7) any statements made by the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Imfeld 70 S.W.3d 698, 704 (Tenn. 2002). The trial court is also required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated in determining the sentence. Imfeld,70 S.W.3d at 704-05.

This Court's review of a challenged sentence is a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). The defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

According to Tennessee sentencing statutes, the sentencing range for a Range II, multiple offender who commits a Class E felony is two to four years. Tenn. Code Ann. § 40-35-112(b)(5). In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the statutory minimum if there are no enhancement or mitigating factors. See, id. § 40-35-210(c).

If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum but still within the range. Id. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Id. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Previously, this Court had concluded that Blakely impacted the validity of our statutory sentencing scheme, insofar as our enhancement provisions permitted a trial court to increase a defendant's presumptive sentence based upon facts not reflected in the jury's verdict or admitted by the defendant. See, e.g., State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034 (Tenn. Crim. App., at Nashville, Nov. 30, 2004), perm. app. denied, (Tenn. 2005). However, recently our supreme court has held that Blakely does not announce a new rule of law or impact the validity of our statutory sentencing scheme. State v. Edwin Gomez and Jonathan S. Londono, No. M2002-01209-SC-R11-CD, --- S.W.3d ----, 2005 WL 856848 (Tenn. April, 14, 2005), petition to rehear denied (Tenn. May 18, 2005). Our supreme court opined that Blakely's prohibition against the imposition of an enhanced sentence based upon facts not authorized by a jury verdict rested on the premise that the sentencing scheme was mandatory and imposed binding requirements on all judges imposing sentences. Gomez, 2005 WL 856848, at **18-19 (citing United States v. Booker, --- U.S. ----, 125 S. Ct. 738, 749 (2005)). According to our supreme court, Tennessee's sentencing scheme does not mandate an increase in sentencing upon the finding of enhancement factors. Id. at **19-22. Instead, Tennessee's sentencing scheme reflects a discretionary process where a trial judge is required to consider enhancement and mitigating factors but is free to exercise discretion when choosing a sentence within the statutory range. Id. at *22. Therefore, our supreme court held that Tennessee's sentencing scheme constitutes a non-mandatory scheme which does not violate the Sixth Amendment right to a jury trial as proscribed by Blakely. Id.

The defendant's argument regarding the trial court's enhancement of his sentence fails for numerous reasons. First, the defendant failed to object to the admission of hearsay evidence of his prior convictions. The issue is, therefore, waived. See Tenn R. Evid. 103(a)(1); Tenn. R.Crim. P. 36(a); see also State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). Second, the Tennessee Rules of Evidence provide that properly certified copies of judgments of conviction or of other official records showing such convictions are admissible as an exception to the hearsay rule. See Tenn. R. Evid. 803(22), 901, and 902. Morever, Tennessee sentencing statutes not only provide for the admission of reliable hearsay at sentencing hearings, but also direct a court to consider the presentence report. See Tenn. Code Ann. §§ 40-35-209(b); 210(g). This Court has previously established that the presentence report is considered to be reliable hearsay, making it unnecessary in most instances to introduce certified copies of convictions. See State v. Adams, 45 S.W.3d 46, 59 (Tenn. Crim. App. 2000). Third, as previously stated, Blakely does not impact the validity of our statutory sentencing scheme. Therefore, the legal foundation upon which the defendant argues sentencing error does not exist.

Likewise, the defendant's argument that the trial court failed to give appropriate weight to mitigating evidence fails. The record reflects that the trial court gave little weight to the mitigating evidence, that the defendant's actions did not cause or threaten serious bodily injury. The weight afforded to an enhancement or mitigating factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. See State v. Mickens, 123 S.W.3d 355, 393 (Tenn. Crim. App. 2003). We have previously recognized that a trial court does not abuse its discretion when assigning little weight to this mitigating factor when the offense is burglary of an automobile because the offense "is inherently an offense that is committed with stealth and without involving the immediate presence of the victim." State v. Murray A. Heraud, No. M1999-00279-CCA-R3-CD, 2000 WL 14698, at *4 (Tenn. Crim. App., at Nashville, Jan. 7, 2000), perm. app. denied (Tenn. Oct. 9, 2000). The record establishes that the trial court properly assigned weight and properly imposed sentencing in accordance with Tennessee sentencing principles. Accordingly, this issue is without merit.

### III. Conclusion

Based upon our review of the record and applicable law, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE