IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2002 Session

## STATE OF TENNESSEE v. ANGELA E. ISABELL

**Direct Appeal from the Circuit Court for Lewis County**
**Nos. 6179, 6188, 6189     Robert E. Lee Davies, Judge**

_____

**No. M2002-00584-CCA-R3-CD - Filed June 27, 2003**

_____

The appellant, Angela E. Isabell, was convicted by a jury in the Lewis County Circuit Court of three counts of the sale or delivery of controlled substances. The trial court imposed a total effective sentence of four years incarceration in the Tennessee Department of Correction. On appeal, the appellant contests her convictions for the "sale or delivery" of controlled substances and further complains about statements made during trial by the State and the State's witnesses. The State concedes that there is reversible error. Finding the appellant's argument to have merit, we reverse all three of the appellant's convictions and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Joel Kachinsky, Summertown, Tennessee (on appeal), and Fred J. Ramos, Nashville, Tennessee (at trial), for the appellant, Angela E. Isabell.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On May 1, 2000, Danny Wigginton was acting as a confidential informant with the Twenty-First Judicial Drug Task Force. Wigginton met with Agent Jack Frantz, a member of the drug task force, to inform Agent Frantz that he had arranged to purchase controlled substance pills from the appellant. Agent Frantz searched Wigginton and Wigginton's vehicle and gave him a ten-dollar-bill with which to make the purchase. Wigginton was also "wired" with a transmitter to record the transaction.

Wigginton immediately went to the house of his next-door neighbor in Hohenwald, Donald Marshall Isabell, to talk with Isabell's daughter, the appellant. The appellant was frequently at her ailing father's residence to take care of him. Wigginton asked the appellant if he could purchase Lortab pills, a controlled substance. The appellant replied that she did not have any Lortab at that time, but she did have Darvocet pills, also a controlled substance.[1] The appellant stated that she could obtain the Lortab at a later date. The appellant typically obtained the Lortab and the Darvocet through legitimate prescriptions for Isabell. Wigginton knew from conversations with his daughter, Amy Wilson, who was also acting as a confidential informant with the drug task force, that the pills were two dollars each. The appellant instructed Wigginton to retrieve the appellant's purse from the porch of the house and hand the purse to her. The appellant handed three Darvocet pills to Wigginton. He paid for the pills with the ten-dollar-bill he had obtained from Agent Frantz. The appellant gave Wigginton four dollars in change. Wigginton confirmed that the appellant needed a ride to Columbia the next day. Unbeknownst to Wigginton, the appellant was going to Columbia to obtain crack cocaine for Wilson.

Wigginton left the residence and met with Agent Frantz who again searched Wigginton and his vehicle. Wigginton relinquished possession of the Darvocet to Agent Frantz.

The next day, May 2, 2000, Wilson met with Agent Frantz to inform him that she had arranged to purchase crack cocaine from the appellant. In accordance with his procedure, Agent Frantz searched Wilson and her vehicle and placed a transmitter on her body to record the transaction. Agent Frantz gave Wilson one hundred dollars with which to make the purchase.

Immediately thereafter, Wilson visited the appellant at Isabell's residence. Wilson was also a neighbor of Isabell's. Wilson informed the appellant that she wished to purchase one hundred dollars' worth of crack cocaine. The appellant telephoned "Boost" or "Boo," an individual who lived in Columbia and told him that she wanted to purchase one hundred dollars' worth of crack cocaine. Wilson handed the appellant the money she had gotten from Agent Frantz. Shortly thereafter, Wigginton drove the appellant to Columbia where she directed him to a residential area. The appellant went into a white house and soon returned to the vehicle. The two later returned to Isabell's residence in Hohenwald. When Wigginton left the appellant at Isabell's residence, the appellant asked Wigginton to send Wilson to the residence. Wilson came to Isabell's residence and the appellant handed her five "rocks" of crack cocaine.

Wilson again met with Agent Frantz who then searched her and her vehicle. Wilson surrendered the crack cocaine to Agent Frantz.

Finally, on May 4, 2000, Wilson followed the established procedure of meeting with a drug task force agent, who on this occasion was Joey Kimble, the director of the task force. After

---

[1] At trial, Glenn Everett, a special agent forensic scientist with the Tennessee Bureau of Investigation crime laboratory, testified that Lortab is the common name for dihydrocodinone or hydrocodone. Additionally, Darvocet is the common name for propoxyphene.

the meeting, Wilson entered Isabell's residence in search of the appellant. The appellant was in the kitchen, cooking. Wilson asked to purchase Lortab. The appellant instructed Wilson to take the pills out of a medicine bottle located in the appellant's purse. Wilson took five pills and placed a twenty-dollar-bill on the kitchen counter. Wilson left the residence, met with Director Kimble, and relinquished custody of the pills.

The appellant was convicted of one count of the sale or delivery of less than .5 grams of crack cocaine and was sentenced to four years incarceration. See Tenn. Code Ann. § 39-17-417(a) (1997). At the same trial, the appellant was found guilty of one count of the sale or delivery of Darvocet and one count of the sale or delivery of Lortab and was sentenced to three years incarceration on each count. Id. The trial court ordered all of the appellant's sentences to be served concurrently.

On appeal, the appellant raises the following issues for our review: (1) "[w]hether the trial court, faced with duplicitous counts in the indictments of these cases, erred by not requiring the state to elect which particular offense it would rely on for conviction, by failing to adequately instruct [the] jury as to its need to achieve unanimity in each case, and by not vacating these verdicts as so unintelligible as to render them invalid" and (2) "[w]hether the trial court erred by not excluding irrelevant and prejudicial testimony, not declaring a mistrial, not giving curative instructions, permitting the State to elicit this irrelevant and prejudicial testimony from Drug Task Force Director and [Wilson], and permitting the State's prejudicial statement during closing argument, regarding the operation of the Twenty-first Judicial Drug Task Force, the Drug Task Force operation in Lewis County in 2000, selling prescription drugs and threats to [Wilson]."

## II. Analysis
### A. Duplicity and Unanimity

The appellant's first issue centers around the nature of her convictions. The appellant argues that the indictments were duplicitous and the jury verdicts were not unanimous because each count charged two distinct offenses, the "sale" or "delivery" of a controlled substance, and the jury convicted the appellant of the "sale or delivery" of the controlled substances. The appellant was indicted on three separate counts. One count charged the appellant with the "sale or delivery" of cocaine on May 2, 2000; one count charged the appellant with the "sale or delivery" of dihydrocodeinone (Lortab) on May 4, 2000; and one count charged the appellant with the "sale or delivery" of propoxyphene (Darvocet). The State concedes that "[t]he verdict was not sufficiently definite or specific to identify the crime for which the defendant was convicted[; therefore,] the convictions here cannot stand."

The sentencing commission comments following Tennessee Code Annotated section 39-17-417 explain that "[t]he commission wished to make it clear that each of these acts[, i.e. the manufacture of a controlled substance, the delivery of a controlled substance, and the sale of a controlled substance,] was a separate offense." See Tenn. Code Ann. § 39-17-417(a)(1)-(3). Generally, it is impermissible to charge two distinct offenses in a single count indictment. See State v. Jefferson, 529 S.W.2d 674, 678 (Tenn. 1975). In other words, "all crimes arising from the same

incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." State v. Gilliam, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995). Accordingly, if the indictments underlying the offenses had charged the offenses in separate alternative counts; e.g., count one the sale of crack cocaine, count two the delivery of crack cocaine; the indictment would not be faulty. We agree with the appellant that the indictments impermissibly charged two separate offenses within a single count.

Moreover, in Tennessee a criminal accused enjoys a constitutional right to a jury trial when she faces confinement or a fine of more than fifty dollars. See State v. Lemacks, 996 S.W.2d 166, 169 (Tenn. 1999). "This constitutional right necessarily includes the right to a unanimous jury verdict before a conviction of a criminal offense may be imposed." Id. at 169-70. Notably,

> [q]uestions regarding jury unanimity generally arise in cases where the prosecution presents evidence to the jury that tends to show more than one criminal offense, but the underlying indictment is not specific as to the offense for which the accused is being tried.

Id. at 170. Importantly, the right to unanimity protects against the possibility of a "patchwork" verdict. See State v. Forbes, 918 S.W.2d 431, 446 (Tenn. Crim. App. 1995). In other words, the appellant is entitled to be convicted of the *sale* of a controlled substance or the *delivery* of a controlled substance; she cannot be convicted of the *sale or delivery* of a controlled substance based upon the same set of facts under a single count of an indictment.

The State argued during closing arguments that the appellant was guilty of the "sale or delivery" of the controlled substances. The trial court instructed the jury that, in order to find the appellant guilty, the jury must find beyond a reasonable doubt "that the appellant sold or delivered" the controlled substances. No unanimity instruction was given. Moreover, the verdict forms reflect that the jury found the appellant "Guilty of Sale or Delivery." Thus, it is unclear as to what offense the jury unanimously convicted the appellant. See Baldwin v. State, 372 S.W.2d 188, 189 (Tenn. 1963). The jury's true decision is a matter of speculation. See State v. Andre P. Virges, No. 02C01-9206-CR-00124, 1994 WL 51420, at *3 (Tenn. Crim. App. at Jackson, Feb. 23, 1994). Accordingly, we must reverse the appellant's conviction due to the lack of unanimity in the verdict.

As an aside, we note that the appellant admits that she did not raise the issue of unanimity at trial. However, "the unanimity requirement is a fundamental right and not contingent upon a request being made." State v. Brown, 823 S.W.2d 576, 585 (Tenn. Crim. App. 1991).

### B. Prejudicial Statements

As her second issue, the appellant complains:

> [Wilson] testified in detail on her role in the Drug Task Force operation in Lewis County in 2000, in which she was a major participant, and that as a result of her participation she has received threats and two of her children were taken away from her because of the safety issues due to the threats against her.

The Director of the Twenty-first Judicial Drug Task Force testified in detail on the operation of the Drug Task Force, its operation in Lewis County during 2000, and the problems in Lewis Count regarding the illegal sale of prescription drugs.

The State, in its closing argument commented on the Drug Task Force's operation in Lewis County in 2000, including the fact that there were fifty-four individuals charged and eighty-something cases in the Lewis County operation, with the majority of cases already disposed of.

The appellant argues that the aforementioned statements were irrelevant and prejudicial. We need not address this issue in detail because, from our review of the record, we can discern no instance in which the appellant objected to the contested statements. Our rules do not require "relief [to] be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Thus, because the appellant failed to make a contemporaneous objection to the offensive statements and instead raised the issue for the first time on appeal, she has waived this issue. See State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).

### III. Conclusion

Based on the foregoing, we reverse the appellant's convictions and remand to the trial court for further proceedings.

_____
NORMA McGEE OGLE, JUDGE