# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. BRANDON L. SMITH

**Direct Appeal from the Circuit Court for Marion County**
**No. 8686     J. Curtis Smith, Judge**

_____

### No. M2010-01458-CCA-R3-CD - Filed March 30, 2012

_____

The defendant, Brandon L. Smith, pled guilty to voluntary manslaughter and agreed to be sentenced as a Range III, persistent offender. After a sentencing hearing, the trial court sentenced the defendant to thirteen years and six months to be served in the Tennessee Department of Correction. On appeal, the defendant contends that the trial court erred when it: (1) relied upon hearsay statements contained in the presentence report at sentencing; and (2) denied him an alternative sentence. Following review of the record, we conclude that the defendant's first claim has been waived and his second claim is moot. We affirm accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

James W. Clements, III, Chattanooga, Tennessee, for the appellant, Brandon L. Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; J. Michael Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Marion County grand jury indicted the defendant on one count of first degree murder and one count of possessing a firearm with intent to go armed during the commission

of a dangerous felony. These charges arose from the killing of the victim, Kenneth D. Gibson. The defendant pled guilty to one count of voluntary manslaughter. The transcript from the hearing, wherein the defendant submitted his guilty plea, is not included in the record. The presentence report provides the following "OFFICIAL VERSION" of the facts which included statements by law enforcement officers describing the events surrounding the shooting.

On June 10, 2008, John R. Griffith, Chief of the New Hope, Tennessee City Police, was dispatched to a shooting call in New Hope. When he arrived, he could hear screaming in the back yard, so he headed toward the sound. In the back yard, he saw a man lying on the ground, not moving. Chief Griffith noted that the victim's lips were turning blue and that the victim had what appeared to be a gunshot wound to his upper left arm. Chief Griffith asked witnesses at the scene what had happened, and witnesses informed him that the defendant had shot the victim. The defendant then came out of the house, crying and stating that he had shot the victim. The defendant said he had been standing beside the picnic table when he shot the victim and that the gun was inside the house in the defendant's bedroom. The defendant took the chief inside, where the chief saw a stainless steel 9mm Beretta lying on the bed with the magazine out of the gun.

Chief Griffith requested assistance from Investigator Allen Weeks, a criminal investigator from the District Attorney's Office. Investigator Weeks and some detectives present at the scene took several statements from witnesses, including statements from Nina Sowinski, Grace Smith, and Meshauna Sowinski. Investigator Weeks attempted to interview the defendant, but the defendant requested an attorney. The investigator went to the hospital, where a doctor showed Investigator Weeks an x-ray of the victim, which depicted the bullet still lodged in the victim's right rib area. While the investigator was still at the hospital, the victim's father arrived. When Investigator Weeks informed the victim's father that the victim had died, the victim's father informed him that the victim and the defendant had exchanged angry words earlier in the week, and that their argument had centered around a girl. The victim's father said that this argument had escalated to the point that "shots had been fired." He offered to discuss the incident with Investigator Weeks further on another occasion.

At the defendant's sentencing hearing, the State entered the presentence report (containing the statements summarized above) into evidence without objection. The defendant's presentence report also contained numerous statements made by various witnesses to the law enforcement officers who were investigating the case. In these statements, the witnesses generally described the events surrounding the shooting and/or prior incidents in which they saw the defendant act in a threatening manner toward the victim.

In addition, the State presented the testimony of Mr. Kevin Brennen. Mr. Brennen testified that the victim used to work with him as a stone mason. Mr. Brennen testified that he also knew the defendant and had purchased marijuana from him on "[d]ozens" of occasions. On cross-examination, Mr. Brennen testified that, when he saw the defendant at a store after the killing, he "grabbed him up and told him what [he] th[ought] of him." The State rested after presenting this testimony and entering the presentence report into evidence.

The defendant presented the testimony of two witnesses. Ms. Grace Smith testified that she was the defendant's mother. She said the defendant, who was twenty-six at the time of the hearing, had lived with her his entire life, with the two of them living at her current residence for twenty-one years. Ms. Smith testified that she was a widow and her husband, Mr. Danny Smith, had died in 2004. The defendant was their only child. Ms. Smith testified that the defendant had a wonderful relationship with his father and was devastated by his father's death.

Ms. Smith testified that the defendant did not work outside the home with frequency. She explained that he had suffered a spinal injury when he was sixteen that limited his ability to work, and that the charges pending against him made it difficult for him to find employment. Ms. Smith testified that she had "home-schooled" the defendant because of his injury, but he had never obtained his GED.

Ms. Smith testified that the victim and defendant went hunting and fishing together. She testified that she met the victim through the defendant, and three years after her husband died, she began dating him. At first, the defendant approved of their relationship. At some later point, the victim moved into her house, where the defendant also resided, and the three lived together for almost a year. Ms. Smith testified that during this time the defendant and the victim had minor disagreements (such as disputes over video games), but nothing serious. Ms. Smith testified that she never saw the defendant threaten the victim with a weapon or shoot at or near him, other then when the two went hunting together.

Ms. Smith testified that on the day of this shooting, there were several people at her home for a cookout, including the victim, the defendant, Ms. Amy McFalls, Ms. Nina Sowinski, and Ms. Meshauna Sowinski. Ms. Smith said the victim and the defendant did not confront each other that day and that the two had never exchanged angry words. She testified that the defendant had no reason to want to shoot the victim. Ms. Smith testified that the defendant was "[h]ysterical" after he shot the victim, and attempted to perform CPR and stop the bleeding. In addition, the defendant was "screaming to call 9-1-1" and was cooperative with police when they arrived – even showing them where the gun was located in his bedroom. Ms. Smith said that the defendant never meant to shoot or kill the victim.

On cross-examination, Ms. Smith conceded that the defendant had multiple criminal convictions from when he was eighteen years old and that he had served jail time because he was on probation for some of those convictions when he committed other crimes. Ms. Smith testified that before this incident, on June 2, 2008, she had asked the victim to leave her home. At that time, both she and the defendant were upset with the victim. At some later point, she had allowed the victim to return to her home with the defendant's approval.

Ms. Smith admitted that the defendant had previously smoked marihuana, starting when he was approximately twenty-three years old. She testified that the defendant did not grow the marijuana and speculated that he had purchased it elsewhere. Ms. Smith also admitted that the defendant had previously been convicted of theft.

Ms. Smith testified that Ms. Nina Sowinski was within fifteen feet of the victim when he was shot, but claimed that she was not in danger. On redirect examination, Ms. Smith testified that the defendant was convicted of theft after he stole a Coca-Cola. She testified that he took responsibility for his actions and pled guilty to the crime.

Ms. Amy McFalls – the defendant's girlfriend at the time of the shooting – also testified on the defendant's behalf. Ms. McFalls testified that she was not present when the shooting occurred but that Ms. Nina Sowinski, Ms. Smith, the defendant, and the victim were all present together in the yard.

Ms. McFalls testified that at some point before the shooting, the victim had sexually molested her, grabbing her between her legs and on her breast, leaving her bruised. Ms. McFalls testified that when she told the defendant what the victim had done, and the defendant confronted the victim, who confirmed her story. The defendant asked his mother, Ms. Smith, to listen to the victim's story, and she did so. Afterward, Ms. Smith asked the victim to leave her home. Ms. McFalls said she never saw the defendant brandish his weapon or threaten the victim in any way.

On cross-examination, Ms. McFalls clarified that the molestation incident had occurred well before the shooting, and that the victim had left the house following the incident when Ms. Smith asked him to do so. Ms. McFalls testified that at some point Ms. Smith and the defendant had invited he victim to return to the home, and that all the problems had smoothed over.

Ms. McFalls testified that her statement to police (as recounted in the defendant's presentence report) contained some inaccuracies. Specifically, she testified that she never told police following the incident that the defendant had grabbed his gun and told the victim to get his stuff and get out of the house. In addition, she testified that she did tell police

that the victim had grabbed Ms. Smith and used her as a human shield to protect himself while he was leaving.

Based upon this evidence, the trial court sentenced the defendant, who pled guilty as a Range III, persistent offender, to thirteen years and six months. In so doing, the trial court noted that the defendant's sentencing range was between ten and fifteen years. The trial court found and applied three enhancement factors: enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; enhancement factor (8), that the defendant, before trial or sentencing, had failed to comply with the conditions of a sentence involving release into the community; and enhancement factor (9), that the defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense. *See* T.C.A. § 40-35-114 (2010). The trial court then denied the defendant an alternative sentence and ordered him to serve his sentence in the Department of Correction.

The defendant now appeals the sentence imposed by the trial court.

## ANALYSIS

On appeal, the defendant contends that the trial court erred when it: (1) relied upon statements contained in the presentence report at sentencing; and (2) denied him an alternative sentence. After careful review, we conclude that the defendant's challenge to the trial court's reliance on statements contained in his presentence report has been waived, and that he has failed to demonstrate that he was qualified for alternative sentencing. Consequently, the defendant's claims are denied.

## I. RELIANCE ON HEARSAY STATEMENTS IN PRESENTENCE REPORT

The defendant contends that the trial court improperly relied upon "hearsay" statements contained in the presentence report. He points to four statements made by the trial court in its findings of fact:

1. Three or four months before [the victim] was killed, he awoke one morning and found the defendant pointing a cocked pistol at his head and demanding that he leave the home.

2. On June 2, eight days before [the victim] was killed, the defendant again confronted [the victim] with a pistol which he was carrying, and fired two shots near, or at, [the victim].

3. During this confrontation, Grace Smith pleaded with her son not to kill [the victim].

4. Ms. Smith told the Raulstons that her son was coming to kill [the victim] and asked the Raulstons to give [the victim] a ride.

The defendant contests these statements, saying that each of the statements was made to law enforcement and that none of the witnesses making the statements testified at his bond or sentencing hearing. Therefore, he had no opportunity to rebut the statements. Moreover, he asserts these statements do not constitute "reliable hearsay" as contemplated by the rules of sentencing.

However, the record reflects that the defendant failed to object to the presentence report at the time it was admitted into evidence. When it was admitted, the following occurred:

[THE STATE]: And Your Honor, that along with the pre-sentence report is the State's case. I'll argue later.

THE COURT: All right. Has the pre-sentence report been entered as an exhibit?

[THE STATE]: Yes, sir, Your Honor. I believe you've also got a copy with the file up there.

THE COURT: There is a copy in the file. I believe it should be made an exhibit.

[THE STATE]: Yes, sir, . . . we ask that that be made an exhibit.

The defendant then called his first witness.

A party waives review of the admission of any evidence to which the party did not contemporaneously object. *See, e.g., State v. Reid*, 213 S.W.3d 792, 847 (Tenn. 2006); *State v. Ricky Estes*, No. M2004-01911-CCA-R3-CD, 2005 WL 1541865, at *6 (Tenn. Crim. App. at Nashville, July 1, 2005) (holding that a defendant waived review of alleged hearsay evidence at a sentencing hearing where he failed to object to the admission of hearsay evidence of his prior convictions and citing Tennessee Rule of Evidence 103(a)(1); Tenn. R. Crim. P. 36(a); *State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988)); *State v. Thornton*, 10 S .W.3d 229, 234 (Tenn. Crim. App. 1999). Consequently, the defendant is

entitled to no relief on this issue.

## II. DENIAL OF ALTERNATIVE SENTENCE

The defendant also contends that the trial court erred by denying him an alternative sentence because it relied on this same evidence, which he claims was inadmissible hearsay. However, our review of the record leads us to the conclusion that the defendant was not eligible for an alternative sentence, and consequently the defendant's claim is moot.

When reviewing sentencing issues, appellate courts conduct a *de novo* review of the record. This review is conducted with a presumption that the factual determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2010). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is performed simply *de novo*. *Id*. at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).

As the appealing party, the defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d at 169. Here, the defendant has failed to carry that burden, because he has failed to demonstrate his eligibility for any form of alternative sentence.

The trial court sentenced the defendant as a Range III, persistent offender to thirteen and a half years, which is justified by the record. Pursuant to statute, only defendants actually sentenced to ten years or less are eligible for probation. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less. . . ."). In addition, because the defendant committed a violent crime, he was ineligible for community corrections. *See* T.C.A. 40-36-106(C) (providing that only offenders who meet all of the statutory criteria are eligible for community corrections; one criterion is that offenders be "convicted of nonviolent felony offenses"). If the defendant does not meet the statutory qualifications for either probation or community corrections, he is not qualified for an alternative sentence. Because the defendant has failed to establish that he was eligible for any form of alternative sentence, his challenge to the trial court's reliance on statements contained in his presentence report to deny him an alternative sentence is denied as moot.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE