IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 19, 2023 at Knoxville

**TAVARIS D. BLEDSOE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-03265          Chris Craft, Judge**

_____

**No. W2023-00361-CCA-R3-PC**

_____

Petitioner, Tavaris D. Bledsoe, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in concluding that he received the effective assistance of counsel. Upon our review, we conclude that Petitioner has failed to prepare a sufficient brief in compliance with Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Criminal Appeals Rule 10(b). Accordingly, his issues are waived, and the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Gerald S. Green, Memphis, Tennessee (on appeal), and James Jones, Memphis, Tennessee (post-conviction hearing), for the appellant, Tavaris D. Bledsoe.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Sam Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Shelby County Grand Jury returned an indictment against Petitioner charging him with second degree murder, possession of a firearm by a convicted felon, and employing a firearm during the commission of a dangerous felony. He subsequently pled guilty to second degree murder and possession of a firearm by a convicted felon.

The facts of this case, as set forth by the State at the guilty plea submission hearing, are as follows:

> [O]n September 16th, 2014[,] at approximately 3:40 a.m., the victim, Aaron Banks, was at the suspect, [Petitioner's] house, residence located at 2609 Lowell. Banks and [Petitioner] became involved in an altercation when [Petitioner] retrieved a handgun off the table and shot Banks. Banks was pronounced dead on arrival.
>
> The Shelby County Medical Examiner ruled Banks a criminal homicide as a result of a gunshot. [Petitioner] was arrested and gave a typed statement as to shooting Banks, because they were arguing. A criminal history was performed as far as [Petitioner], and [Petitioner] showed to be a convicted felon for aggravated robbery out of McNairy County, Tennessee. This did occur here in Shelby County, ask that counsel stipulate these would've been the facts had this matter gone to trial.

At the guilty plea submission hearing, trial counsel reminded the trial court about Petitioner's mental health status. The trial court inquired about Petitioner's medication, and Petitioner named the prescriptions he was taking. Petitioner told the trial court that he was "clear-headed." The trial court asked about the extent of Petitioner's education, and Petitioner said that he attended college for six months.

The trial court reviewed the plea agreement with Petitioner, explained his rights, and reviewed Petitioner's potential sentence if found guilty. The court also discussed the agreed-upon sentence from the plea agreement. Both trial counsel and the trial court questioned Petitioner about the case, his potential defense, his understanding of his rights and the plea agreement, and his potential sentencing exposure after a trial. Petitioner indicated that he understood his rights and the plea agreement, and he requested to serve his sentence in a special needs facility. The trial court acknowledged that it could not guarantee service in a special needs facility but would make a recommendation to the Department of Correction. After being advised of his rights, Petitioner repeatedly indicated that he wanted to enter into the plea agreement. The trial court specifically found that Petitioner "freely and voluntarily[,] knowingly and intelligently made" the agreement. The court also acknowledged trial counsel's efforts in representing Petitioner.

Petitioner filed a timely pro se petition for post-conviction relief alleging that his guilty plea was not "knowingly, willingly, or voluntarily entered" and that he was denied effective assistance of counsel. More specifically, he argued that trial counsel failed to disclose Petitioner's mental health issues to the trial court and erroneously advised Petitioner that he would be sentenced to a special needs facility due to his mental health

status "instead of the penitentiary." Counsel was appointed, and no amended petition was filed.

*Post-Conviction Hearing*

At the post-conviction hearing, trial counsel testified that he was appointed to represent Petitioner, and due to mental health concerns, he had Petitioner evaluated by Dr. Fred Steinberg, who was deceased at the time of the hearing. Trial counsel noted that Petitioner had a "significant mental health history," and he thought that Petitioner had been institutionalized twenty-eight times. He was concerned about Petitioner's ability to understand the evidence and his defense at trial. Trial counsel noted that the subject matter of Petitioner's facial tattoos[1] and his low IQ score test also caused him to question Petitioner's competency.

Trial counsel testified that he filed a motion to suppress Petitioner's statement, which "was very short, but it was incriminating." There were no other witnesses to the offense. The victim was Petitioner's cousin, and Petitioner's defense was one of self-defense. Trial counsel recalled that Dr. Steinberg testified at the suppression hearing as to his report concerning Petitioner's mental health evaluation, and the State cross-examined him. Trial counsel testified that after the trial court denied the suppression motion, Petitioner "really began to push to make the guilty plea." He said that Petitioner's statement was the strongest evidence against him.

Concerning Petitioner's claim of self-defense, trial counsel testified:

The problem with self-defense was that you have to be able to prove that [Petitioner], himself, was also not engaged in unlawful activity and whether the gray area of gambling or drug use or whatever had that perhaps ended, [Petitioner] was a felon.

So, at some point, he possessed a weapon in order to shoot his cousin. And from studying how this Court had ruled in many jury trials, it was generally my understanding that this Court would find he was engaged in unlawful conduct and not entitled to the self-defense instruction for possessing a gun.

Trial counsel believed that he communicated this to Petitioner, but he did not think that Petitioner would be able to fully understand and appreciate the information because "he had a very limited intellectual quotient[,]" which "Dr. Steinberg had articulated to [trial counsel]."

---

[1] Although trial counsel could not remember for certain, he testified that Petitioner's tattoos "said something like, I'm insane or I'm crazy." Petitioner also had a "tattoo of a crack in his forehead and bolts on his neck as if he was a monster like Frankenstein."

Trial counsel testified that Dr. Steinberg's report indicated that Petitioner was experiencing "psychosis" during his mental evaluation. Trial counsel admitted that he never felt as though Petitioner was not "in his right state of mind." He said, "More than [Petitioner], maybe by limited intellectual capacity didn't understand something and I would try to explain it on numerous occasions. But I did not ever have a moment where he was experiencing psychosis." Trial counsel testified that Petitioner was always pleasant during their interactions and a "very nice young man to me." He was also cooperative.

As to Dr. Steinberg's "impression" that Petitioner did not appear to demonstrate competency to understand or waive *Miranda* warnings, trial counsel testified;

> The problem in [Petitioner's] statement that the doctor so accurately cites in his report and testimony is in that having to give a statement of waiving his *Miranda* rights, he stated the exact opposite of understanding his *Miranda* rights, which is, you know, he can remain silent and that can't be used against him.
>
> And he said, "I have to give a statement or ya'll will lock me up." And that's the exact opposite of what your *Miranda* rights are. It may have been true, but it's not an explanation that he understood his rights.

(emphasis added). Trial counsel agreed that the concerns about Petitioner's understanding of his rights were brought to trial counsel's attention prior to the guilty plea, and it was "brought to the Court's attention in trying to have the statement found unconstitutional because he did not give a knowing and intelligent waiver of his *Miranda* rights."

Trial counsel testified that the trial court was aware, prior to the guilty plea, of Dr. Steinberg's "impression" that Petitioner did not "demonstrate competency to enter a guilty plea or to enter a plea and stand trial" and that Petitioner remained "actively psychotic." Trial counsel again noted that Petitioner had been "institutionalized in a mental health hospital like [twenty-eight] times[,]" and he often heard voices. He had reviewed much of Petitioner's "extensive medical records[.]" Trial counsel agreed that the other findings in Dr. Steinberg's report concerning Petitioner's mental health were brought to the trial court's attention prior to the guilty plea submission hearing. He further acknowledged that the State's mental health expert felt that Petitioner was "malingering" and was competent. Trial counsel testified that he raised concerns about Petitioner's competency again with the trial court during the guilty plea process.

Trial counsel testified concerning the plea negotiations and said that the State's offer went from forty years down to twenty-five years. He said:

So, the choice was face long odds at trial to get a mandatory [seventy]-year sentence, [sixty] years for second degree murder and ten years for employment of a firearm in the commission of a dangerous felony. Or come down from his range to the [twenty-five] years with ten years concurrent on the felon in possession of a firearm.

Trial counsel discussed Petitioner's options with him and discussed the offer with trial counsel's peers. "[T]he consensus of those peers that I consulted was the [Petitioner] was likely to be found competent to stand trial and make this decision." Trial counsel also had many phone conversations with Petitioner's mother. He never felt "comfortable" with Petitioner's guilty plea. Trial counsel testified:

I had concerns then as I do now and before his plea. And I dragged it out as long as possible after the [un]successful suppression motion to the point that the State was going to demand a trial setting, which I thought would cause [Petitioner] to face an additional four and a half decades in prison at 100 percent.

And because he was still consistently expressing his desire to plead guilty, I took it all the way to the point that the State was demanding a trial setting before I acquiesced with advice from my peers and many conversations with [Petitioner] and his mother.

On cross-examination, trial counsel agreed that in denying Petitioner's motion to suppress, the trial court concluded:

This Court finds Dr. Steinberg's opinion and testimony [were] a product of assumption and possibility, not definitive at all and was somewhat ambivalent.

Dr. Zager's [the State's expert] opinion, on the other hand, was the more reasonable and the most supported by facts, records and evidence formed from decades of experience in giving forensic psychological examinations. This Court finds that [Petitioner] made a knowing, intelligent and voluntary waiver of his *Miranda* rights and his statement was taken constitutionally.

Trial counsel further agreed that Petitioner was a career offender at the time of the offenses in this case. He did not believe that his representation of Petitioner was deficient, but he disagreed with the outcome "to a certain extent."

Petitioner testified that he had experienced mental health issues "since I was [nineteen] all the way up [until] I was [twenty] - - up to [thirty] years old. I was going every other week." He was also receiving mental health assistance from the Department

of Correction at the time of the post-conviction hearing which included medication. Petitioner agreed that he and trial counsel discussed his mental health issues, and trial counsel "had paperwork." Petitioner testified that he had five prior felony convictions for which he was sent to Western State Mental Health Institute in Bolivar, Tennessee, where he remained for a year and then served "three years in the county." He said that he was released with time served and had no violations.

Petitioner testified that he pled guilty in this case because he had been incarcerated and "just got out [of] the suicide tank. I was anxious and didn't know what I was doing and just did something." He said that he had been in the "suicide tank" for approximately one week because he was talking about committing suicide.

Petitioner testified that he did not recall if he and trial counsel discussed going to trial after the suppression motion was denied or if they discussed a competency hearing. Petitioner also claimed that he did not know how much time he faced if his case went to trial, but he knew that it was more than twenty years. He did not remember the trial court explaining his rights or sentencing exposure to him at the guilty plea submission hearing. Petitioner testified that he told the trial court he understood everything because he was "so anxious and [he] wanted to get out of 201 Poplar." He agreed that he told the trial court he was on the proper medication and that he was "clear headed" and knew what was going on at the time of the guilty plea. Petitioner remembered telling the trial court that he heard voices and requested that the court place him in a special needs facility. He said that he constantly heard voices and was hearing them at the time of the post-conviction hearing. Petitioner testified that he "just signed the paper" and was "trying to get to the penitentiary" to get help rather than being in the suicide tank every day.

Petitioner agreed that he gave a signed statement at the time of his arrest and testified concerning his recollection of the circumstances of the shooting. He and trial counsel reviewed all of the discovery from his case, and he talked with several doctors concerning his mental health issues. He answered all of their questions and complied with their requests. When asked if he decided to plead guilty after talking with trial counsel, Petitioner said: "We debated. I told him I didn't know. But I told him I was [going to] plead guilty because I wanted to get out of 201 Poplar." Petitioner admitted to writing a letter to the District Attorney General about the circumstances of the shooting and a plea offer and a letter to an assistant district attorney general about his desire to enter a guilty plea. Petitioner claimed he did not ask for the twenty-five-year offer that trial counsel procured for him, he "just got offered" it. He did not know anything additional trial counsel could have done for him.

After the conclusion of the hearing, the post-conviction court entered an order denying the post-conviction petition. The court made extensive findings and concluded that Petitioner failed to show deficient performance by trial counsel and that there was "no

showing [Petitioner] was not competent to enter his plea or did not have a sufficient understanding of the consequences of his plea."

## ANALYSIS

Petitioner contends that the post-conviction court erred by "failing to view the cumulative effect of Petitioner's claims as a constructive denial of the right to counsel and, consequently, a structural constitutional error requiring the grant of the relief prayed for in the Petition for Post-Conviction relief[.]" He further argues cumulative error. The State responds that Petitioner has waived his arguments due to inadequate briefing. We agree with the State.

Tennessee Rule of Appellate Procedure 27(a)(7) requires that the appellant set forth an argument for each issue, along with "the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" Tenn. R. App. P. 27(a)(7). Similarly, Rule 10(b) of the Rules of this Court states plainly that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

Where there is a failure to provide this Court with an adequate appellate record and failure to prepare a sufficient brief in compliance with the Rules of Appellate Procedure, the issue is waived. *State v. Killebrew*, 760 S.W.2d 228, 236 (Tenn. Crim. App. 1988) (waived issue where defendant had failed to adequately brief issues by making appropriate references to the record, cite authority in support of issues, and/or make appropriate arguments); *see also State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022) (waived issues where Defendant had failed to provide an adequate appellate record and had not prepared a sufficient brief) *no perm app. filed*; *see also State v. Lott*, No. M2008-02127-CCA-R3-CD, 2010 WL 565664, at *4 (Tenn. Crim. App. Feb 18, 2010) ("Appellant also makes a cursory statement that her sentences should have been run concurrently rather than consecutively. Appellant includes no argument or citations to authority to support the statement. . . . Because Appellant has failed to cite any authority for this claim, it is waived."); *see also Seaton v. State*, No. E1999-01312-CCA-R3-CD, 2000 WL 1177462, at *3 (Tenn. Crim. App. Aug 21, 2000) (waived issue where appellate brief contained no citations to appropriate authorities in support of argument).

In the "Statement of the Facts" section of Petitioner's brief, he states only the following: "The facts of the case are adequately recited in the Order denying Post Conviction relief. (R. pages 18-31)." While Petitioner cites law in his brief related to legal principles such as the right to legal counsel, structural and non-structural errors, plain error and cumulative error, he makes not a single reference to the record in the argument section, nor does he make any arguments as to how the applicable law applies to the facts in his

- 7 -

case. Because of the inadequacy of Petitioner's brief, we must conclude that he has waived appellate consideration of this issue. "We caution counsel, [], that appellate review is frustrated by the failure to include facts relevant to the issues on appeal and the failure to identify the basis in the record for the argument presented and that compliance with the Rules of Appellate Procedure is expected." *State v. Lynch*, No. E2019-00195-CCA-R3-CD, 2020 WL 1899611, at *3 (Tenn. Crim. App. Apr. 17, 2020); *see also State v. Moss*, No. M2021-00043-CCA-R3-CD, 2023 WL 1117795, at *2 (Tenn. Crim. App. Jan. 31, 2023), *no perm. app. filed*. Having concluded that Petitioner has failed to comply with the applicable rules, he has waived the issues and we do not reach the merits of his claims.

## Conclusion

For the foregoing reasons, we dismiss Petitioner's appeal.

_____
JILL BARTEE AYERS, JUDGE