IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

## STATE OF TENNESSEE v. MATTHEW RICHARD HERRON

**Appeal from the Criminal Court for Campbell County**
**No. 19462     Zachary R. Walden, Judge**

_____

**No. E2024-01216-CCA-R3-CD**

_____

Following a trial, a jury found Defendant, Matthew Richard Herron, guilty of felony reckless endangerment with a firearm and unlawful possession of a firearm having been convicted previously of a felony drug offense, for which he received a total effective sentence of ten years' incarceration.  Defendant represented himself at trial and now represents himself on appeal.  Upon review of the parties' briefs, the record, and the applicable law, we conclude that Defendant has failed to prepare a sufficient brief in compliance with Tennessee Rule of Appellate Procedure 27(a) and Tennessee Court of Criminal Appeals Rule 10(b) and that, therefore, his claims are waived.  Accordingly, we affirm the judgments of the criminal court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Matthew Richard Herron, Whiteville, Tennessee, pro se (at trial and on appeal); and Andrew Crawford, Knoxville, Tennessee, advisory counsel (at trial).

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jared Effler, District Attorney General; and Ashley Claiborne and Andrea Bridges, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This case arises from an incident that occurred on February 25, 2023, when Defendant possessed a firearm and fired it at Curtis Ward outside of a gas station in Caryville. At the time of the shooting, Defendant had a prior felony conviction for the promotion of the manufacture of methamphetamine. Defendant was arrested and charged with felony reckless endangerment and unlawful carrying or possession of a firearm.

On March 3, 2023, the Campbell County General Sessions Court appointed counsel to represent Defendant. Despite being represented by counsel, Defendant filed numerous pro se motions with the general sessions court. The court subsequently dismissed the charges against Defendant on April 14, 2023, due to a "failure to prosecute."

On May 17, 2023, the Campbell County Grand Jury indicted Defendant on one count each of felony reckless endangerment with a firearm, unlawful possession of a firearm having been convicted previously of a crime of violence, and unlawful possession of a firearm having been convicted previously of a felony drug offense. Thereafter, the Campbell County Criminal Court appointed counsel to represent Defendant.

Following his indictment and the appointment of counsel, Defendant filed numerous pro se, handwritten documents with the criminal court, including documents titled "Motion to Suppress," "Motion to Dismiss," "Discovery," "Request for Restraining Order," "[Petition] for Speedy Trial," and "Motion for New Judge." On November 27, 2023, the criminal court entered an order denying relief on Defendant's pro se filings.

Prior to trial, the criminal court conducted a thorough voir dire with Defendant, found that Defendant knowingly and voluntarily waived his right to counsel, and entered a written order on allowing Defendant to proceed pro se. The State then dismissed the charge of unlawful possession of a firearm having been convicted previously of a violent felony, and Defendant proceeded to trial on the remaining two charges with advisory counsel.

At trial, Robin Stagnolia testified that she worked at the Exxon gas station in Caryville and that she was familiar with Defendant. She stated that Defendant had parked his maroon sport utility vehicle (SUV) in the gas station parking lot for several weeks and appeared to be living in the car in the parking lot. Ms. Stagnolia said that she knew Defendant because of his presence in the parking lot and because he would enter the gas station several days a week to purchase cigarettes or something to drink. Ms. Stagnolia testified that she was working on the evening of February 25, 2023, when Defendant entered the store "wearing a black jacket" and black pants. She recalled that Defendant

asked her for a lighter for his cigarette. Ms. Stagnolia stated that Defendant lit his cigarette, took several drags, "laughed really weird," and then "walked out the door." The State admitted into evidence surveillance footage from inside the gas station showing that Defendant wore "a black hoodie with black pants."

Curtis Ward testified that he was at the gas station on the evening of the shooting because he occasionally took out the gas station's trash in exchange for a free drink. Mr. Ward said that he was inside the gas station and saw Defendant light his cigarette and exit the gas station. Mr. Ward then went outside to smoke a cigarette. Mr. Ward testified that, when he exited the gas station, he turned right and started walking towards a cage holding propane tanks. He said that he saw Defendant standing outside of the gas station near the door.

Shortly after Mr. Ward exited the store, Ms. Stagnolia saw Defendant pull out a gun, point it at Mr. Ward, and pull the trigger. Mr. Ward was only a few feet away from Defendant when Defendant fired the gun. Mr. Ward testified that he heard the gunshot and "felt" the bullet pass by his head. He said that the gunshot knocked his hat off his head and that Defendant was the only person who could have fired the shot. Mr. Ward stated that he felt afraid after the gunshot. He said that Defendant "took off running" after shooting at him, heading in the direction of a nearby Shoney's restaurant. Ms. Stagnolia called 911 to report the incident.

Caryville Police Department (CPD) Officer Jacob Fox testified that he responded to the scene about two minutes later. He spoke with Ms. Stagnolia, Mr. Ward, and another witness who identified a shell casing "about two parking spots away from the front door." Officer Fox explained that he unsuccessfully searched in the area immediately surrounding the gas station, including a nearby creek bank, for the gun used in the shooting. Officer Fox testified that he also determined that Defendant's vehicle was registered to the address of Defendant's father.

Gary Phillips, Defendant's uncle, testified that he lived about a quarter of a mile away from the gas station where the shooting occurred. He explained that, on the evening of the shooting, Defendant arrived at his house and asked if he could help him place a wheel back on Defendant's SUV. Mr. Phillips said that Defendant changed his pants because they were wet. Mr. Phillips testified that he drove Defendant back to the gas station. Mr. Phillips said that, on the drive, they encountered Mr. Phillips' son, Garrett.[1] He said that Garrett got into the vehicle and that they continued to the gas station to repair Defendant's SUV.

---

[1] Because Mr. Phillips and Garrett share a surname, we will refer to Garrett by his first name for clarity; we intend no disrespect in doing so.

- 3 -

Officer Fox stated that Defendant arrived back at the gas station about twenty minutes after he responded to the scene. Ms. Stagnolia said that Defendant was wearing different clothes when he returned to the gas station than he was wearing at the time of the shooting. Photographs of Defendant showed that he was wearing a blue shirt when he returned.

Officer Fox testified that he approached Defendant as Defendant, Mr. Phillips, and Garrett were standing next to Defendant's SUV and that he took Defendant into custody. Both Mr. Phillips and Garrett told Officer Fox that they had seen Defendant with "an old German handgun from World War Two." Mr. Phillips further stated that he had advised Defendant "to get rid of" the gun. Garrett, who worked at a restaurant near the gas station, told Officer Fox that he had seen Defendant outside the gas station earlier that evening and that Defendant had a backpack and was wearing a black hoodie at that time.

Officer Fox stated that he later executed a search warrant on Defendant's SUV. He said that, inside the SUV, he found a backpack, which was consistent with Garrett's statement that he had seen Defendant with a backpack. Officer Fox also discovered a red t-shirt and a black hoodie, along with a pair of black pants that "were wet and kind of dirty." Officer Fox said that the pants appeared as though Defendant "had gone down a dirt embankment[.]" Officer Fox also located a 9-millimeter shell casing inside Defendant's SUV that was consistent with the shell casing he found in the gas station parking lot.

Assistant Chief of the Jacksboro Police Department Franklin Ayers testified that he went to the home of Defendant's father two or three weeks after the shooting. When he arrived, Defendant, who was sitting on the couch, got up to go to the bathroom. After Defendant left the bathroom, Defendant's father went into the bathroom and found a firearm that he had never seen before and that did not belong to him. Defendant's father immediately brought the firearm to Assistant Chief Ayers.

After being informed that Assistant Chief Ayers had recovered a firearm that may have been used in the gas station shooting, Officer Fox examined the gun and noted that "it appeared to be the handgun" that Mr. Phillips and Garrett described. Officer Fox testified that he sent the firearm to the Tennessee Bureau of Investigation (TBI) for examination.

TBI Special Agent Alex Brodhag, an expert in firearms identification, testified that he examined the firearm provided by Officer Fox. He said that he test-fired the gun and compared the shell casings to the two shell casings that Officer Fox recovered at the scene and from Defendant's SUV. Agent Brodhag testified that, through his examination, he found sufficient agreement of the individual characteristics of the shell casings to

determine that the casings found at the scene had been fired from the same gun as the test fired cartridges. He stated that he was "as certain as [he] could be" that the cartridges matched. Additionally, Agent Brodhag noted that someone else had examined his work and had also concluded that the casings matched.

Following deliberations, the jury convicted Defendant as charged. The trial court sentenced Defendant as a Range II offender to an effective sentence of ten years' incarceration. Prior to the entry of the judgments of conviction, Defendant—who was continuing to represent himself—filed a premature notice of appeal, which the trial court construed as a motion for new trial. Following a hearing, the trial court denied the motion for new trial in a written order. This timely appeal follows.

## Analysis

On appeal, Defendant filed a twenty-page handwritten brief, in which he discusses a variety of issues. Those issues include, among other things: a discussion of a separate misdemeanor theft case; a claim that the Campbell County Chamber of Commerce obstructed Defendant's case and committed "heinous crimes" and treason; allegations that the notary public obstructed Defendant's case and committed treason by altering the official record; an assertion that the trial judge committed "high treason"; a claim that Defendant's right to bear arms was infringed; claims that the bailiff and "Man of the Watch" committed "high treason" and conspiracy to commit first degree murder by "putting [Defendant's] life in danger"; an assertion that arresting a federal officer is illegal; a claim that Defendant was "under attack" based on an identity that "does not exist anymore"; a request that the firearm in this case be returned to Defendant's father; an allegation that Defendant's right to a "speedy trial public in 30 days [was] not honor[ed]"; an assertion that imprisonment is not allowed as a form of punishment; a claimed double jeopardy violation based upon Defendant's arrest on the same charges twice; an insistence that Defendant is a "sovereign 'citizen' American na[t]ional"; complaints about Defendant's treatment in the jail; claims that Mr. Ward planted the shell casing in Defendant's SUV, that shells were switched in court, and that bullets were added to the firearm; an assertion that all of Defendant's property was seized by Campbell County; an assertion that "forced" advisory counsel obstructed Defendant's case; and an insistence that Defendant was charged with "endangering the life of a dead man" because Mr. Ward was "listed as dead or lost at sea."

The State responds that Defendant's arguments have been waived based upon the failure of Defendant's brief to conform to Tennessee Rule of Appellate Procedure 27(a) and Rule 10(b) of the Rules of the Court of Criminal Appeals. We agree with the State.

Tennessee Rule of Appellate Procedure 27(a) provides that an appellant's brief shall contain, among other requirements, under appropriate headings and in the order here indicated:

(1) A table of contents, with references to the pages in the brief;

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

. . . .

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a).

When a defendant fails to prepare a sufficient brief in compliance with the Rules of Appellate Procedure, his issues are waived. *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *see also Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011); *State v.*

- 6 -

*Shannon*, No. W2024-00174-CCA-R3-CD, 2025 WL 432835, at \*3 (Tenn. Crim. App. Feb. 7, 2025), *perm. app. denied* (Tenn. June 20, 2025); *Bledsoe v. State*, No. W2023-00361-CCA-R3-PC, 2024 WL 127028, at \*5 (Tenn. Crim. App. Jan. 11, 2024), *no perm. app. filed*; *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at \*2 (Tenn. Crim. App. Aug. 2, 2024), *no perm. app. filed*. Similarly, Rule 10(b) of the rules of this court states plainly that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

Our review of a case is "frustrated" by a failure to follow these rules, *Abbott v. State*, No. M2020-00500-CCA-R3-PC, 2022 WL 102607, at \*18 (Tenn. Crim. App. Jan. 11, 2022), *perm. app. denied* (Tenn. June 8, 2022), and this court routinely has held that the failure to make appropriate references to the record or comply with the rules results in a waiver of the issue, *State v. Killebrew*, 760 S.W.2d 228, 231-33, 35 (Tenn. Crim. App. 1988) (waiving issues for failure to make appropriate references to the record); *Bledsoe*, 2024 WL 127028, at \*5 (concluding that the defendant waived issues by failing to make a single reference to the record in the argument section and failing to argue how the applicable law applies to the facts of his case); *State v. Moss*, No. M2021-00043-CCA-R3-CD, 2023 WL 1117795, at \*1-2 (Tenn. Crim. App. Jan. 31, 2023) (explaining that, when a defendant "cites some applicable law in his brief, [but] he makes not a single reference to the record in the argument section, or anywhere else in his brief," he has "waived appellate consideration" of his issues), *no perm. app. filed*; *State v. Lynch*, No. E2019-00195-CCA-R3-CD, 2020 WL 1899611, at \*3 (Tenn. Crim. App. Apr. 17, 2020) (concluding that defendant's issues were waived for failing to include a relevant statement of facts and failing to cite to authority), *no perm. app. filed*.

Generally, "pro se litigants . . . are not held to the same strict drafting standards as attorneys and . . . pro se pleadings should be more liberally construed." *State v. Walker*, No. W2012-01593-CCA-R3-CD, 2013 WL 3968804, at \*3 (Tenn. Crim. App. Aug. 1, 2013), *no perm. app. filed*. However, pro se litigants "are not . . . entitled to shift the burden of litigating their case to the courts." *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). Accordingly, pro se litigants "must comply with the same substantive and procedural law to which represented parties must adhere." *Id.* (citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920-21 (Tenn. Ct. App. 2000)). When a pro se litigant fails to "even remotely" satisfy Tennessee Rule of Appellate Procedure 27(a) and Tennessee Court of Criminal Appeals Rule 10, this court will consider the issues waived. *Walker*, 2013 WL 3968804, at \*3.

In this case, we conclude that Defendant has waived his arguments due to his failure to comply with the briefing requirements of Tennessee Rule of Appellate Procedure 27(a)

and Tennessee Court of Criminal Appeals Rule 10(b). Defendant's brief is entirely deficient; it contains no argument, citation to authorities, or appropriate references to the record as required by Rule 10(b). Moreover, Defendant's brief does not contain a table of contents, a table of authorities, a statement of the issues presented for review, a statement of the case, a statement of the facts, any references to the record, "a concise statement of the applicable standard of review[,]" or a short conclusion, describing the precise relief sought by Defendant. *See* Tenn. R. App. P. 27(a)(1)-(2), (4)-(8). Instead, Defendant's brief can best be described as an almost incomprehensible, stream-of-consciousness list of grievances and unsubstantiated claims. When the State's brief asserted that Defendant had waived consideration of his issues due to the deficiencies in his brief, Defendant did not file a reply brief or any other pleading to address and/or correct these deficiencies. Accordingly, we conclude that Defendant's arguments are waived. Tenn. Ct. Crim. App. R. 10(b).

## Conclusion

Based upon the foregoing, we affirm the judgments of the criminal court.


s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE

- 8 -